1  FRIEDMAN DUMAS & SPRINGWATER LLP
   CECILY A. DUMAS (S.B. NO. 111449)
2  M. ELAINE HAMMOND (S.B. NO. 197444)
   150 Spear Street, Suite 1600
3  San Francisco, CA 94105
   Telephone Number:  (415) 834-3800
4  Facsimile Number:  (415) 834-1044

5  Proposed Attorneys for Debtor
   THE WILKES BASHFORD COMPANY
6

7

8              UNITED STATES BANKRUPTCY COURT

9              NORTHERN DISTRICT OF CALIFORNIA

10                SAN FRANCISCO DIVISION

11

12  In re                                    Case No. 09-33497 TEC

13  The Wilkes Bashford Company,             Chapter 11

14            Debtor.                        EMERGENCY MOTION FOR INTERIM
                                             AND FINAL ORDERS AUTHORIZING
15  Tax I.D. 94-2944325                      USE OF CASH COLLATERAL AND
                                             GRANTING REPLACEMENT LIENS
16                                           PURSUANT TO BANKRUPTCY CODE
                                             §§ 361 AND 363
17
                                             Date:   November 10, 2009
18                                           Time:   9:30 a.m.
                                             Place:  United States Bankruptcy Court
19                                                   235 Pine Street, Courtroom 23
                                                     San Francisco, CA
20                                           Judge:  Thomas E. Carlson

21          The Wilkes Bashford Company ("Debtor"), debtor and debtor-in-possession in

22  the above-captioned case, hereby moves this Court on an emergency basis for entry of interim

23  and final orders authorizing use of cash collateral and granting replacement liens (the "Cash

24  Collateral Motion").  The Cash Collateral Motion is brought pursuant to 11 U.S.C. §§ 361

25  and 363 and Federal Rule of Bankruptcy Procedure 4001.  The Cash Collateral Motion is

26  based on the discussion below, the concurrently filed declaration of Michael Appel in Support

27  of First Day Motions, the Introductory Statement and Certification of Compliance with

28  Guidelines re Cash Collateral Motion (the "Introductory Statement"), the pleadings and

Case: 09-33497   Doc# 12   Filed: 11/09/09   Entered: 11/09/09 19:41:54   Page 1 of 25

papers on file herein, and upon such further evidence as may be presented prior to or at the time of the hearing on the Cash Collateral Motion.

As soon as the Court sets a hearing on the Cash Collateral Motion, the Debtor will serve a notice to (1) the parties asserting an interest in the cash collateral, (2) the Debtor's creditors holding the twenty largest unsecured claims, and (3) the Office of the United States Trustee.

## I. JURISDICTION

The Court has jurisdiction over the matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

## II. RULE 4001 CONCISE STATEMENT OF RELIEF REQUESTED

1. Through this Cash Collateral Motion, the Stipulation Authorizing Debtor's Use of Cash Collateral and Granting Adequate Protection (the "Stipulation")[1], a copy of which is attached hereto as Exhibit A, and pursuant to the proposed interim order approving the Cash Collateral Motion (the "Interim Order"), a copy of which is attached hereto as Exhibit B, the Debtor (i) seeks authorization for use of cash collateral for the Debtor's operations and Chapter 11 administrative expenses; (ii) seeks to provide adequate protection for such use of cash collateral by granting replacement liens on postpetition assets of the Debtor to secure the diminution in value (if any) of the prepetition collateral of parties asserting a security interest in assets that are "Cash Collateral" within the meaning of Bankruptcy Code § 363(a); and (iii) seeks to provide additional adequate protection through the grant of a superpriority administrative claim to certain parties asserting an interest in Cash Collateral.

2. Concurrently, with this Cash Collateral Motion, the Debtor has filed its *Emergency Motion for Order Authorizing Debtor to: (A) Use Cash Collateral; (B) Incur Postpetition Debt; (C) Grant Certain Liens and Provide Security and Other Relief to Ed*

---

[1] Capitalized terms not otherwise defined herein has the same meaning ascribed to them in the Stipulation.

Case: 09-33497    Doc# 12    Filed: 11/09/09    Entered: 11/09/09 19:41:54    Page 2 of 25

*Mitchell West, LLC; and (D) Grant Certain Liens and Provide Adequate Protection to Comerica Bank* (the "DIP Financing Motion") seeking approval of postpetition borrowing pursuant to a Loan and Security Agreement with Ed Mitchell West, LLC (the "DIP Loan Agreement"). Ed Mitchell West, LLC ("Mitchell") is the proposed stalking horse bidder for a sale of substantially all of the Debtor's assets through a sale pursuant to Bankruptcy Code § 363.

3.     Pursuant to Federal Rules of Bankruptcy Procedure ("Rule") 4001(d)(1)(B), material provisions of the Stipulation are set forth in the following sections of the Stipulation and/or the Interim Order:

4.     **Purposes for Use of Cash Collateral.**  The Debtor requires immediate authority to use of Cash Collateral to maintain its business operations and pay its ongoing operational expenses, including without limitation the payment of its employees and on-going costs and expenses necessary to maintain the Debtor's operations for the period prior to the Debtor's sale of assets as an on-going concern.  Without the ability to use Cash Collateral, the Debtor cannot meet these expenses and is in jeopardy of having to cease operations.  The Debtor is separately seeking authority for postpetition financing pursuant to the DIP Loan Agreement to be used to purchase inventory for sale through the Debtor's retail stores.

5.     **Parties Asserting an Interest in Cash Collateral and Proposed Adequate Protection.**

(a)     **Comerica Bank ("Comerica").**  As set forth above, Comerica has stipulated to the use of Cash Collateral on the terms of the Stipulation.  Comerica claims a security interest in all personal property of the Debtor, including accounts, inventory, goods and deposit accounts.  It asserts a claim of approximately $3,145,237.  In order to secure the diminution in value (if any) of the Prepetition Collateral, the Debtor intends to provide Comerica with adequate protection in the form of (i) a replacement lien in postpetition assets to the same extent, priority and validity as its lien in prepetition assets and (ii) a superpriority

{00469473.DOC v 2}

EMERGENCY MOTION FOR ORDER AUTHORIZING USE OF CASH COLLATERAL AND GRANTING REPLACEMENT LIENS

administrative claim.  Such liens and claims shall be junior only to Ed Mitchell West, LLC ("Mitchell"), the proposed postpetition lender.  Stipulation, Paragraph 3.

(b)     **Shareholder Lien Claims.**  Three shareholders of the Debtor, Wilkes Bashford, Joseph Callahan and Joseph Callahan (collectively, the "Shareholder Lenders"), claim a security interest in Cash Collateral consisting of accounts and inventory of the Debtor and proceeds therefrom.  The Shareholder Lenders have consented to the use of Cash Collateral on the same terms and conditions as the Stipulation.  A copy of the Shareholder Lenders consent to use of Cash Collateral is attached hereto as Exhibit C.  The Shareholder Lenders assert a claim of $750,000 in the aggregate.  The security interests of the Shareholder Lenders are subordinate to that of Comerica.  In order to secure the diminution in value (if any) of the prepetition collateral of the Shareholder Lenders, the Debtor intends to provide the Shareholder Lenders with adequate protection in the form of (i) a replacement lien in postpetition assets to the same extent, priority and validity as its lien in prepetition assets and (ii) a superpriority administrative claim.  Such liens and claims shall be junior only to Mitchell and Comerica.

(c)     **RAI Credit, LLC ("RAI").**  RAI asserts a security interest in Cash Collateral consisting of accounts of the Debtor.  RAI provides credit card processing services for purchases made using The Wilkes Bashford Company credit card.  As RAI deducts its fees prior to distribution of payments received to the Debtor, RAI is holding funds of the Debtor in excess of the amounts owed to RAI.  As adequate protection, the Debtor intends to provide RAI a lien in postpetition assets to the same extent, priority and validity as its lien in prepetition assets.

6.     **Material Terms of the Stipulation.**

(a)     **Term of Use.**  Cash Collateral may be used for operations in accordance with the Budget through the earlier of (i) December 1, 2009, subject to written amendment by the parties, or (ii) the date that a sale authorized by this Court is closed.  Upon

Case: 09-33497     Doc# 12     Filed: 11/09/09     Entered: 11/09/09 19:41:54     Page 4 of 25

termination of the Stipulation, the Debtor is entitled to seek court approval for use of Cash Collateral.  Stipulation, Paragraphs 1 and 2.

(b) **Events of Default.**  The Stipulation provides that any of the following constitutes an Event of Default:  (a) Failure to perform or comply with the terms of the Stipulation, (b) Failure to adhere to the Budget, except to the extent the Debtor is allowed to carry forward unused Cash Collateral, and (c) the occurrence of any event of default defined in the DIP Loan Agreement, provided that such event of default remains uncured following any applicable grace period.  Stipulation, Paragraph 6.

## III.  STATEMENT OF FACTS

### A.  The Chapter 11 Filing

On November 6, 2009, the Debtor filed a voluntary petition with this court for reorganization under chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code").  The Debtor continues to manage and operate its business as a debtor in possession pursuant to Bankruptcy Code sections 1107 and 1108.  No trustee or examiner has been appointed in this chapter 11 case and no committee has been appointed or designated.

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

### B.  The Debtor's Business and Anticipated Sale

The Debtor is a San Francisco institution and a global icon in luxury specialty retail.  Founded in 1966 by Wilkes Bashford, the company offers unmatched merchandise quality and an exceptional level of service to its customers.  The stores have a loyal and upscale clientele that appreciates the high-quality garments, superb craftsmanship and masterful coordination offered by the Debtor.  The company's exceptional customer service is fully-realized in the long-term relationships established between the members of its sales team and loyal customers.

Case: 09-33497    Doc# 12    Filed: 11/09/09    Entered: 11/09/09 19:41:54    Page 5 of 25

1    The Debtor's flagship store is located in the Union Square district of San
2    Francisco.  It houses six floors of merchandise, segmented by men's and women's collections
3    and a home store, and offers a range of product lines.  In 1995, the Debtor opened a "Wilkes
4    Sport" store in Mill Valley, California.  In 2001, the Debtor opened its Palo Alto store in the
5    Stanford Shopping Center to better serve its customers in Silicon Valley.  In 2006, the Debtor
6    expanded to the Monterey Peninsula, opening a store in Carmel, California.

7    The 2008-2009 recession resulted in poor performance in the luxury sector of
8    the consumer market, including the Debtor.  In Spring 2009, the Debtor retained Quest
9    Turnaround Advisors, LLC ("Quest") to assist it in assessing its financing and strategic
10   alternatives, and to improve operating performance.  The result of the Debtor's and Quest's
11   efforts was the closure of the Mill Valley store in September 2009 and the Carmel store in
12   October 2009, and a restructuring of the Debtor's prepetition trade payables.  The Debtor's
13   principal liabilities consist of its unsecured obligations to vendors, its secured obligation to
14   Comerica Bank and certain shareholders, and its unsecured obligations to landlords.

15   Ultimately, a sale of the business presented the best alternative to address the
16   Debtor's needs.  The Debtor entered into negotiations to sell substantially all of its assets to
17   Mitchell.  Mitchell is affiliated with a private luxury apparel retailer located on the East
18   Coast.  After the closing of the acquisition, Mitchell will continue to operate the San
19   Francisco and Palo Alto stores.  This case is filed in order to consummate the sale according
20   to the terms of the agreement and obtain approval of a sale pursuant to Bankruptcy Code
21   § 363.  A motion to approve the sale is being filed concurrently; the sale is subject to higher
22   and better offers.  The Debtor anticipates obtaining court approval and closing the sale by the
23   end of November; maximizing the value to the estate by providing for a transition prior to the
24   holiday shopping season.

25   **C.    Creditors Asserting an Interest in Cash Collateral**
26   As set forth above, five entities assert an interest in Cash Collateral:

{00469473.DOC v 2}

6

EMERGENCY MOTION FOR ORDER AUTHORIZING USE OF CASH COLLATERAL AND GRANTING REPLACEMENT LIENS

Case: 09-33497   Doc# 12   Filed: 11/09/09   Entered: 11/09/09 19:41:54   Page 6 of 25

1      1.      Comerica claims a security interest in all personal property of the

2 Debtor, including accounts, inventory, goods and deposit accounts. It asserts a secured claim

3 of approximately $ 3,145,237.

4      2.      The three Shareholder Lenders claim a security interest in Cash

5 Collateral consisting of accounts and inventory of the Debtor and proceeds therefrom. The

6 Shareholder Lenders assert a claim of $750,000 in the aggregate.

7      3.      RAI asserts a security interest in Cash Collateral consisting of accounts

8 of the Debtor. RAI provides credit card processing services for purchases made using The

9 Wilkes Bashford Company credit card. As RAI deducts its fees prior to distribution of

10 payments received to the Debtor, RAI is holding funds of the Debtor in excess of the

11 outstanding obligations due to RAI.

12 **IV. NECESSITY FOR USE OF CASH COLLATERAL**

13      The Debtor requires authorization on an interim and final basis for use of Cash

14 Collateral in order to maintain its business operations and pay ongoing operational expenses,

15 including employee wages, during the period prior to a sale of the Debtor's assets. The

16 Debtor anticipates a sale of substantially all assets within thirty days of the filing of the case.

17 The Debtor's value in such sale is based on its on-going business operations. Without this

18 authorization the Debtor will be unable to meet its continuing obligations and will be forced

19 to close its doors. In so doing, the Debtor's value will be significantly reduced, thereby

20 reducing the potential recovery to creditors.

21      Bankruptcy Code § 363(c)(2) provides that the Debtor may not use, sell or

22 lease cash collateral unless "(a) each entity that has an interest in such cash collateral

23 consents; or (b) the court, after notice and hearing, authorizes such use, sale, or lease in

24 accordance with the provisions of this section." 11 U.S.C. § 363(c)(2). Comerica has

25 consented to the use of the Cash Collateral only upon the terms and conditions described in

26 the Stipulation. The Shareholder Lenders have consented to the use of Cash Collateral on the

27 same terms and conditions as agreed to by Comerica.

28

Further, Bankruptcy Code § 361 provides that adequate protection may be provided by the granting of an additional or replacement lien to the extent that such stay, use, sale, lease, or grant results in a decrease in the value of an entity's interest in such property. 11 U.S.C. § 361(2). Moreover, Bankruptcy Code § 507(b) expressly provides that when adequate protection has been provided to the holder of a claim secured by a lien, and such creditor has an allowable claim, "then such creditor's claim under such subsection shall have priority over every other claim allowable under such subsection." 11 U.S.C. § 507(b).

The granting of a replacement lien and superpriority administrative claim as adequate protection has been negotiated in good faith and at arm's length between the Debtor and Comerica, and the terms of such arrangement are fair and reasonable under the circumstances and reflect the Debtor's exercise of prudent business judgment consistent with its fiduciary duties and are supported by reasonably equivalent value and fair consideration.

The Debtor believes that the proposed adequate protection negotiated with Comerica, and consented to by the Shareholder Lenders, will be sufficient to protect Comerica and the Shareholder Lenders from diminution in the value of their interests in the prepetition collateral during the period it is used by the Debtor. See *In re Kain*, 86 B.R. 506, 513 (Bankr. W.D. Mich. 1988); *In re Beker Indus. Corp.*, 58 B.R. 725, 736 (Bankr. S.D.N.Y. 1986); *In re Pine Lake Village Apartment Co.*, 19 B.R. 819, 828 (Banks. S.D.N.Y. 1982).

Finally, RAI's security interest extends to accounts of the Debtor. Due to the terms of the credit processing agreement with RAI, the Debtor believes that RAI is at all times holding funds of the Debtor in excess of the Debtor's obligations to RAI. Therefore, the Debtor proposes to grant RAI as adequate protection a replacement lien, to the extent of Cash Collateral used, if any, on all post-petition property of the same type and character as the property to which RAI's prepetition lien extended.

The Debtor should be authorized to use the Cash Collateral on an interim and final basis as provided herein to maintain ongoing operations and avoid immediate and irreparable harm and prejudice to its estate and all parties in interest.

Case: 09-33497    Doc# 12    Filed: 11/09/09    Entered: 11/09/09 19:41:54    Page 8 of 25

# V. THE PROPOSED STIPULATION FOR USE OF CASH COLLATERAL

## Authorized Use of Cash Collateral

Comerica has consented to the use of Cash Collateral for on-going operations in accordance with the Budget attached to the Stipulation, provided that any authorized by unused Cash Collateral provided for on the Budget may be carried forward. The authorization to use Cash Collateral shall terminate on the earlier of (i) December 1, 2009, subject to written amendment by the parties, or (ii) the date that a sale authorized by this Court is closed. Upon termination of the Stipulation, the Debtor is entitled to seek court approval for use of Cash Collateral upon twenty-four (24) hours written notice to Comerica.

## Adequate Protection

In order to secure the diminution in value (if any) of the Prepetition Collateral, the Debtor seeks authority to provide Comerica with adequate protection in the form of (i) a replacement lien in postpetition assets to the same extent, priority and validity as its lien in prepetition assets and (ii) a superpriority administrative claim. Comerica shall be afforded adequate protection pursuant to Bankruptcy Code §§ 503(b), 507(a), and 552(b), junior only to Mitchell.

## Events of Default and Remedies

The Stipulation provides that any of the following constitutes an Event of Default: (a) Failure to perform or comply with the terms of the Stipulation, (b) Failure to adhere to the Budget, except to the extent the Debtor is allowed to carry forward unused Cash Collateral, and (c) the occurrence of any event of default defined in the DIP Loan Agreement, provided that such event of default remains uncured following any applicable grace period.

Upon the occurrence of an Event of Default which is not cured with two (2) business days after receipt of written notice to the Debtor and its counsel, the Debtor's right to use of Cash Collateral will terminate unless extended by an order of the Court.

{00469473.DOC v 2}

EMERGENCY MOTION FOR ORDER AUTHORIZING USE OF CASH COLLATERAL AND GRANTING REPLACEMENT LIENS

# VI.  INTERIM APPROVAL SHOULD BE GRANTED

Rules 4001(b) and (d) provide that a final hearing for authority to use cash collateral may be commenced no earlier than 15 days after service of the motion.  If the motion requests, the court may authorize the use of cash collateral before the 15 day period expires to the extent necessary to avoid immediate and irreparable harm to the estate pending a final hearing.

The Debtor requests that the Court authorize the Debtor's entry into the Stipulation and use of Cash Collateral prior to the expiration of the 15 day period.  The Debtor requires immediate interim approval in order to use Cash Collateral to maintain the Debtor's ongoing operations in anticipation of a sale.  The Debtor's ongoing operational expenses include payment of employee wages and other costs and expenses necessary to maintain the Debtor's operations for the period prior to the Debtor's sale of assets.  Without the ability to use cash collateral, the Debtor cannot meet these expenses and is in jeopardy of having to cease operations.  If the Debtor's operations are halted its reputation, and therefore value as a luxury retailer, will be irreparably damaged.  This damage would significantly reduce the value of the Debtor's operations as a going-concern and, thereby, reduce the assets available to creditors following a sale.  The Debtor needs the use of cash collateral now to avoid immediate and irreparable harm to the Debtor and its bankruptcy estate.  The Budget provided limits the use of Cash Collateral to those reasonable and necessary expenses requiring immediate payment to avoid immediate and irreparable harm to the estate.

# VII.  CONCLUSION

The Debtor respectfully requests that the Court enter the attached Interim Order (a) approving the Debtor's entry into the Stipulation with Comerica, (b) authorizing the Debtor's use of Cash Collateral as set forth herein, (b) authorizing the granting of replacement liens as provided herein to parties asserting an interest in the Cash Collateral, (c) authorizing the granting of superpriority administrative claims to Comerica and the

{00469473.DOC v 2}

1    Shareholder Lenders, (d) setting a final hearing on the use of Cash Collateral and authorizing

2    notice as requested, and (d) granting such other and further relief as is just and proper.

     Dated: November 9, 2009                    Respectfully submitted,

3

4                                               FRIEDMAN DUMAS & SPRINGWATER LLP

5

6

7                                        By:    */s/ Cecily A. Dumas*
                                               Cecily A. Dumas
8                                              Proposed Attorneys for Debtor
                                               THE WILKES BASHFORD COMPANY
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

{00469473.DOC v 2}                    11    EMERGENCY MOTION FOR ORDER AUTHORIZING USE
                                               OF CASH COLLATERAL AND GRANTING REPLACEMENT
                                               LIENS

# EXHIBIT A

1  FRIEDMAN DUMAS & SPRINGWATER LLP
   CECILY A. DUMAS (S.B. NO. 111449)
2  M. ELAINE HAMMOND (S.B. NO. 197444)
   150 Spear Street, Suite 1600
3  San Francisco, CA 94105
   Telephone Number: (415) 834-3800
4  Facsimile Number: (415) 834-1044

5  Proposed Attorneys for Debtor
   THE WILKES BASHFORD COMPANY

6

7

8              UNITED STATES BANKRUPTCY COURT

9              NORTHERN DISTRICT OF CALIFORNIA

10                SAN FRANCISCO DIVISION

11

12  In re                              Case No. 09-33497 TEC

13  The Wilkes Bashford Company,       Chapter 11

14              Debtor.                **STIPULATION AUTHORIZING
                                       DEBTOR'S USE OF CASH
15  Tax I.D. 94-2944325                COLLATERAL AND GRANTING
                                       ADEQUATE PROTECTION**
16

17

18          The Wilkes Bashford Company ("Debtor"), Debtor and Debtor-in-possession

19  in the above-captioned case, and Comerica Bank ("Comerica") by and through proposed

20  counsel for the Debtor and counsel for Comerica enter into this stipulation ("Stipulation") for

21  the use of cash collateral in accordance with sections 361 and 363 of the Bankruptcy Code

22  and Rule 4001(d) of Federal Rules of Bankruptcy Procedure with regard to the following

23  facts:

24                        **I.  RECITALS**

25  **The Chapter 11 Filing**

26          A.      On the petition date, the Debtor filed a voluntary petition with this court

27  for reorganization under chapter 11 of Title 11 of the United States Code ("Bankruptcy

28  Code").  The Debtor continues to manage and operate its business as a debtor in possession

EXHIBIT 1A

pursuant to Bankruptcy Code §§ 1107 and 1108. No trustee or examiner has been appointed in this chapter 11 case and no committee has been appointed or designated.

B.     The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

**The Debtor's Business and Anticipated Sale**

C.     The Debtor is a San Francisco institution and a global icon in luxury specialty retail. Founded in 1966 by Wilkes Bashford, the company offers unmatched merchandise quality and an exceptional level of service to its customers. The stores have a loyal and upscale clientele that appreciates the high-quality garments, superb craftsmanship and masterful coordination offered by the Debtor. The company's exceptional customer service is fully-realized in the long-term relationships established between the members of its sales team and loyal customers.

D.     The Debtor's flagship store is located in the Union Square district of San Francisco. It houses six floors of merchandise, segmented by men's and women's collections and a home store, and offers a range of product lines. In 1995, the Debtor opened a "Wilkes Sport" store in Mill Valley, California. In 2001, the Debtor opened its Palo Alto store in the Stanford Shopping Center to better serve its customers in Silicon Valley. In 2006, the Debtor expanded to the Monterey Peninsula, opening a store in Carmel, California.

E.     The 2008-2009 recession resulted in poor performance in the luxury sector of the consumer market, including the Debtor. In Spring 2009, the Debtor retained Quest Turnaround Advisors, LLC ("Quest") to assist it in assessing its financing and strategic alternatives, and to improve operating performance. The result of the Debtor's and Quest's efforts was the closure of the Mill Valley store in September 2009 and the Carmel store in October 2009, and a restructuring of the Debtor's prepetition trade payables. The Debtor's principal liabilities consist of its unsecured obligations to vendors, its secured obligation to Comerica Bank and certain shareholders, and its unsecured obligations to landlords.

F. Ultimately, a sale of the business presented the best alternative to address the Debtor's needs. The Debtor entered into negotiations to sell substantially all of its assets to Ed Mitchell West, LLC ("Mitchell"). Mitchell is affiliated with a private luxury apparel retailer located on the East Coast. After the closing of the acquisition, Mitchell will continue to operate the San Francisco and Palo Alto stores. This case is filed in order to consummate the sale according to the terms of the agreement and obtain approval of a sale pursuant to Bankruptcy Code § 363. A motion to approve the sale will be filed shortly after filing; the sale is subject to higher and better offers. The Debtor anticipates obtaining court approval and closing the sale by the end of November; maximizing the value to the estate by providing for a transition prior to the holiday shopping season.

**The Debtor's Relationship with Comerica**

G. Prior to the Petition Date, the Debtor and Comerica entered into that certain Third Amended and Restated Loan and Security Agreement, dated June 30, 2006, as modified (collectively, the "Loan Agreement").

H. As of the Petition Date, outstanding obligations under the Loan Agreement ("Prepetition Obligations") were approximately $3,145,237. The Prepetition Obligations are secured by substantially all assets of the Debtor ("Prepetition Collateral"), and are guaranteed in separately designated, limited amounts by the shareholders of the Debtor, Wilkes Bashford, Joseph Callahan, Joseph Keenan, and Jeffrey Levenberg.

I. The Prepetition Collateral includes cash and accounts receivable, and, as a result, all of the Debtor's cash and all cash proceeds of the Prepetition Collateral is cash collateral under section 363(a) of the Bankruptcy Code ("Cash Collateral").

J. The Debtor has an immediate and critical need to use the Cash Collateral in order to continue the operation of its businesses, including the payment of its payroll and other direct operating expenses, and the purchase of services necessary to carry on its business in a manner that will avoid irreparable harm to the Debtor, Comerica, and other creditors and parties in interest.

Case: 09-33497    Doc# 12    Filed: 11/09/09    Entered: 11/09/09 19:41:54    Page 15 of 25

K.     The Debtor's use of Cash Collateral is vital to its ability to continue operations up to and through the closing of a sale of substantially all the Debtor's assets in a sale pursuant to Bankruptcy Code § 363(b).

**The DIP Facility**

L.     The Debtor has agreed to enter into an agreement for the use of $650,000 in postpetition financing ("DIP Financing") with Mitchell on the terms and conditions as set forth in the Debtor-in-Possession Credit and Security Agreement ("DIP Loan Agreement"), subject to court approval.

## II.  AGREEMENT

For the foregoing reasons, the Debtor and Comerica enter into this Stipulation, subject to the approval of the Court, to provide for the Debtor's use of the Cash Collateral and to grant adequate protection to Comerica.

1.     Use of Cash Collateral.  The Debtor may use the Cash Collateral in the ordinary course of its business and in accordance with the operating budget which reflects projected utilization of cash calculated on a weekly basis ("Budget"), a copy of which is attached hereto as Exhibit A; provided, that (a) the Debtor may carry forward authorized but unused cash through the term of the Stipulation, and (b) the Debtor may use cash proceeds received from the sales of inventory in the ordinary course of business to fund its operating expenses as provided in the Budget.  The Debtor's use of the Cash Collateral shall be restricted by the terms of the Budget and this Stipulation.

2.     Term of Use.  The Stipulation and order permit use of Cash Collateral through the earlier of (1) December 1, 2009 or (2) the closing of a sale approved by the Bankruptcy Court; provided, that the Debtor agrees that, absent the consent of Comerica, (a) the maximum amount that may be drawn by the Debtor on the DIP Financing shall be $550,582, and (b) the Debtor may not draw on the DIP Financing except to the extent required to purchase inventory.  Upon termination of the Stipulation, the Debtor shall be entitled to seek court approval for further use of Cash Collateral.

Case: 09-33497   Doc# 12   Filed: 11/09/09   Entered: 11/09/09 19:41:54   Page 16 of 25

3. <u>Adequate Protection</u>. The Debtor hereby grants to Comerica the following as adequate protection: (a) the granting of replacement liens on postpetition assets of the Debtor to secure the diminution in value (if any) of the Prepetition Collateral ("<u>Replacement Liens</u>"); and (b) the granting of an administrative priority claim to Comerica to secure diminution in value (if any) of the Prepetition Collateral. As further provided in the order of the Court approving the DIP Financing, Comerica shall be afforded adequate protection pursuant to Bankruptcy Code §§ 503(b), 507(a) and 552(b), junior only to the adequate protection provided to Mitchell.

4. <u>Other Expenses of Administration</u>. The Debtor agrees that no other expense of administration incurred by the Debtor shall be payable from the Cash Collateral during the term of the Stipulation except as included in the Stipulation and the Budget or as otherwise ordered by the Court.

5. <u>No Surcharge</u>. During the period that the Stipulation is in effect, the surcharge provisions of Bankruptcy Code § 506(c) shall not be imposed on Comerica or any of its collateral.

6. <u>Events of Default</u>. The failure of the Debtor (a) to perform or comply with the provisions of the Stipulation, (b) to adhere to the Budget, except to the extent of the carry-forward provided in Paragraph 1 supra, and (c) the occurrence of any event of default defined in the DIP Loan Agreement; <u>provided</u>, that such event of default remains uncured following any applicable grace period.

7. <u>Remedy</u>. Upon the occurrence of an Event of Default which is not cured within two (2) business days after receipt of written notice to the Debtor and its counsel by facsimile or electronic mail the Debtor's right to use the Cash Collateral will terminate unless extended by an order of the Court.

8. <u>Expedited Hearing</u>. Comerica Consents to an expedited hearing on a motion by the Debtor to use the Cash Collateral after an Event of Default or upon termination of the DIP Facility and the Debtor consents to an expedited hearing on a motion of Comerica

Case: 09-33497   Doc# 12   Filed: 11/09/09   Entered: 11/09/09 19:41:54   Page 17 of 25

to vary the terms of this Stipulation for cause upon twenty-four (24) hours written notice of the moving party to the other by facsimile or electronic mail.

Dated: November 9, 2009

THE WILKES BASHFORD COMPANY

By its counsel of record,

FRIEDMAN DUMAS & SPRINGWATER LLP

By: _/s/ Cecily Dumas_
　　　Cecily Dumas
　　　Proposed Attorneys for Debtor

Dated: November 9, 2009

COMERICA BANK

By its counsel of record,

BUCHALTER NEMER, a professional corporation

_/s/ Robert Izmirian_
By: 　Robert Izmirian
　　　Counsel for Comerica Bank

Case: 09-33497　　Doc# 12　　Filed: 11/09/09　　Entered: 11/09/09 19:41:54　　Page 18 of 25

# EXHIBIT B

1  FRIEDMAN DUMAS & SPRINGWATER LLP
   CECILY A. DUMAS (S.B. NO. 111449)
2  M. ELAINE HAMMOND (S.B. NO. 197444)
   150 Spear Street, Suite 1600
3  San Francisco, CA 94105
   Telephone Number:  (415) 834-3800
4  Facsimile Number:  (415) 834-1044

5  Proposed Attorneys for Debtor
   THE WILKES BASHFORD COMPANY

6

7

8              UNITED STATES BANKRUPTCY COURT

9              NORTHERN DISTRICT OF CALIFORNIA

10                SAN FRANCISCO DIVISION

11

12  In re                                  Case No. 09-33497 TEC

13  The Wilkes Bashford Company,           Chapter 11

14              Debtor.                    INTERIM ORDER AUTHORIZING USE
                                           OF CASH COLLATERAL AND
15  Tax I.D. 94-2944325                    GRANTING REPLACEMENT LIENS
                                           PURSUANT TO BANKRUPTCY CODE §§
16                                         361 AND 363

17                                         Date:   November 10, 2009
                                           Time:  9:30 a.m.
18                                         Place:  United States Bankruptcy Court
                                                   235 Pine Street, Courtroom 23
19                                                 San Francisco, CA
                                           Judge:  Thomas E. Carlson
20
         The Wilkes Bashford Company ("Debtor"), Debtor and Debtor-in-possession
21
   in the above-captioned case, filed its emergency motion for interim and final orders
22
   authorizing use of cash collateral and granting replacement liens, pursuant to 11 U.S.C. §§
23
   361 and 363 and Federal Rule of Bankruptcy Procedure 4001; appearances are as stated on
24
   the record; the court having considered the motion, the introductory statement and
25
   certification by counsel, and the supporting declaration of Michael Appel, the representations
26
   made at the hearing, and good cause appearing;
27

28

{00472261.DOC v        EXHIBIT 1B          INTERIM ORDER AUTHORIZING USE OF CASH
1}                                          COLLATERAL AND GRANTING REPLACEMENT LIENS

1  **IT IS HEREBY ORDERED** that:

2      1.      The Debtor is authorized to use cash collateral on an emergency basis

3  through and including December 1, 2009, to the extent necessary to avoid immediate and

4  irreparable harm to the Debtor's business on the terms set forth in the Stipulation Authorizing

5  Use of Cash Collateral and Granting Adequate Protection (the "Stipulation"), and the Budget

6  provided therein; the Stipulation is attached hereto and incorporated herein;

7      2.      Comerica Bank, Wilkes Bashford, Joseph Callahan, Joseph Keenan, and

8  RAI Credit, Inc. are granted replacement liens on postpetition assets of the Debtor to the same

9  extent, validity and priority as their prepetition liens upon and security interests in the

10  Debtor's assets to the extent of any diminution in value of the Prepetition Collateral (as

11  defined in the Cash Collateral Motion);

12      3.      Comerica Bank, Wilkes Bashford, Joseph Callahan, and Joseph Keenan

13  are granted superpriority administrative claims to the extent of any diminution in value of the

14  Prepetition Collateral; and

15      4.      Final hearing on the Debtor's motion for use of cash collateral is

16  continued to November ___, 2009 at _____ .m.

17  **\*\*\* END OF ORDER \*\*\***

18

19

20

21

22

23

24

25

26

27

28

| | |
|---|---|
| 1 | <u>**Court Service List**</u> |
| 2 | <u>Debtor</u><br>The Wilkes Bashford Company |
| 3 | Attn: Michael Appel<br>375 Sutter Street |
| 4 | San Francisco, CA 94105 |
| 5 | <u>Attorneys for Debtor</u>:<br>Cecily Dumas |
| 6 | M. Elaine Hammond<br>Friedman Dumas & Springwater |
| 7 | 150 Spear Street, Suite 1600<br>San Francisco, CA 94105 |
| 8 | <u>United States Trustee</u>: |
| 9 | Office of the U.S. Trustee<br>235 Pine Street, Suite 700 |
| 10 | San Francisco, CA 94104 |
| 11 | <u>Attorneys for Comerica</u>:<br>Robert Izmirian, Esq. |
| 12 | Buchalter Nemer<br>333 Market Street |
| 13 | 25th Floor<br>San Francisco, CA 94105-2102 |

Lines 14 through 28 (no text).

# EXHIBIT C

## AUTHORIZATION FOR USE OF CASH COLLATERAL

  The Wilkes Bashford Company (the "Company") anticipates the filing of a Chapter 11 bankruptcy case. The undersigned individuals are secured lenders to the Company whose interest in collateral is subordinate to Comerica Bank ("Comerica"). Each of the signatories below hereby consents to the use of cash collateral by the Company on any terms and conditions agreed to by Comerica.

Dated: November 4, 2009

_____
Wilkes Bashford

_____
Joe Callahan

_____
Joe Keenan

{00473138.DOC v 1}

# EXHIBIT C

## AUTHORIZATION FOR USE OF CASH COLLATERAL

The Wilkes Bashford Company (the "Company") anticipates the filing of a Chapter 11 bankruptcy case. The undersigned individuals are secured lenders to the Company whose interest in collateral is subordinate to Comerica Bank ("Comerica"). Each of the signatories below hereby consents to the use of cash collateral by the Company on any terms and conditions agreed to by Comerica.

Dated: November 4, 2009

_____

Wilkes Bashford

_____

Joe Callahan

_____

Joe Keenan

{00473138.DOC v 1}